UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS A. BARNES, 606739,

      Petitioner,

v.

SHIRLEE HARRY,

      Respondent.

CASE NO. 16-13944

HON. Judith E. Levy

MAG. Anthony P. Patti

_____

**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ........................................................................................ 1

    Statements in Compliance with Habeas Rule 5(b) ......................... 2

    A.    Statute of Limitations .............................................. 2

    B.    Exhaustion ............................................................ 3

    C.    Procedural Default ................................................ 3

    D.    Non-retroactivity Doctrine ..................................... 3

Statement of the Case ........................................................................ 3

Standard of Review Pursuant to AEDPA .................................................. 5

Argument ............................................................................................ 12

I.    A State prisoner challenging his conviction must file a
federal habeas petition within one year of the conclusion of
direct review or the expiration of time for seeking direct
review.  Here, Barnes filed the petition 3,068 days after the
statute of limitations expired, and has failed to demonstrate
that extraordinary circumstances justify equitable tolling.
The petition should be dismissed under Habeas Rule 4 as
untimely .......................................................................................... 12

    A.    Discussion of controlling authority ....................... 12

    B.    Discussion of facts and procedural history ........... 16

    C.    Argument .............................................................. 17

        1.    Barnes is not entitled to statutory tolling because
his state-court collateral attack was filed after
the one-year statute of limitations expired. .............. 17

        2.    Barnes is not entitled to equitable tolling ................. 18

            a.    The law of equitable tolling ................................ 19

i

      b.     Barnes has not shown entitlement to equitable tolling under *Holland* or *McQuiggin* ............................................................ 21

II.   Barnes' claim is procedurally defaulted for two reasons. Thus, he is not entitled to habeas relief. ....................................... 23

    A.   Barnes did not properly raise his claim on direct review. .................................................................................... 24

    B.   Barnes did not present through the state appellate system his claim that counsel was ineffective for allowing him to enter an involuntary plea. ......................... 25

    C.   Because he has procedurally defaulted his claim, Barnes is not entitled to habeas review of the issue. ........... 28

    D.   The procedural default is not excused by the ineffective assistance of appellate counsel. ........................................... 30

        1.    The law regarding the ineffective assistance of appellate counsel .......................................................... 30

        2.    The performance of Barnes' appellate attorneys did not rise to the level of ineffective assistance. ........ 33

        3.    Even if Barnes could show cause to excuse his first procedural default, he cannot excuse his second one. .................................................................. 35

        4.    Even if this Court finds that Barnes' *appellate* attorneys were ineffective, he is not entitled to habeas relief. ............................................................... 36

III.  Barnes is not entitled to habeas relief on his ineffective-assistance-of-counsel claim because his plea was voluntarily and knowingly made, the trial court did nothing to coerce his plea, and his trial counsel was not ineffective for not interjecting during the proper plea proceeding. ............................ 36

A.    Clearly established federal law regarding the
      ineffective assistance of counsel ...........................................37

B.    Analysis .................................................................... 40

Conclusion ............................................................................ 49

Relief.................................................................................... 53

Certificate of Service ............................................................ 54

## INTRODUCTION

Petitioner, Douglas Barnes, sexually penetrated a five-year-old girl in almost every way imaginable.  The very young child explained that sometimes she would spit out Barnes' semen.  She directed investigators to specific locations where she spit.  Those locations were analyzed and discovered to contain Barnes' DNA.

As result of his Wayne County no-contest plea conviction of first-degree criminal sexual conduct (CSC) involving a person under 13 years old, § 750.520b(1)(a), the State now holds Barnes in custody in the Michigan Department of Corrections.  Barnes is currently serving a sentence of 7 to 20 years' imprisonment.

Barnes commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court.  The State understands the petition to be raising the following claim:

> I.   The state trial and appellate courts erred in denying petitioner's motion for relief from judgment because petitioner was denied effective assistance of trial counsel and he had good cause for failing to file an application for leave to appeal based upon ineffective assistance of appellate counsel.

Should the Court interpret the petition to be raising different claims, the State requests an opportunity to file a supplemental pleading.  To the extent that Barnes failed to raise any other claims that he raised in the state courts, those claims are now abandoned. *See Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an issue is abandoned if a party does not present any argument respecting the issue in his brief). Thus, habeas review of abandoned claims is barred.

The State now answers the petition and requests that it be denied.

## STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)

With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

### A.    Statute of Limitations

The State asserts that the claim raised by Barnes is barred by the applicable statute of limitations as more fully discussed in Argument I below.

**B.     Exhaustion**

The State is not arguing that Barnes' habeas claim is barred by the failure to exhaust a claim for which a state court remedy exists.

**C.     Procedural Default**

The State asserts that Barnes has procedurally defaulted his claim as more fully discussed below.

**D.     Non-retroactivity Doctrine**

The State is not arguing that Barnes' claim is barred by the non-retroactivity doctrine.

**STATEMENT OF THE CASE**

Barnes was convicted of first-degree CSC involving a person under 13 years old.  The trial court sentenced him to 7 to 20 years' imprisonment.

Following his conviction and sentence, on direct appeal, Barnes did not file an application for leave to appeal in the Michigan Court of Appeals or the Michigan Supreme Court.

Five years later, though, Barnes returned to the trial court and filed a motion for relief from judgment, which contained the following claim:

I.   Defendant was denied his constitutional right to effective assistance of counsel when his trial attorney failed to investigate his case.

The trial court denied the motion for relief from judgment on its merits and under Michigan Court Rule 6.508(D)(3)(a) and (D)(3)(b).  (11/14/11 Wayne Cir. Ct. Order at 4, 7, 8.)

After the trial court denied the motion for relief from judgment, Barnes filed an application for leave to appeal in the Michigan Court of Appeals.  The Michigan Court of Appeals denied the application for leave to appeal for failure to establish relief under Michigan Court Rule 6.508(D)(3)(a).  (12/19/14 Mich. Ct. App. Order at 1.)

Barnes applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Michigan Court Rule 6.508(D).  *People v. Barnes*, 871 N.W.2d 166 (Mich. 2015) (unpublished table decision).

## STANDARD OF REVIEW PURSUANT TO AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 134 S. Ct. 10, 15, 16 (2013); 28 U.S.C. § 2254(d).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits."  28 U.S.C. § 2254(d).  Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly established Federal law pursuant to § 2254(d)(1) if "the state-court decision identifies the correct governing legal principle in existence at the time," but "unreasonably applies that principle to the facts of prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal quotation marks and citation omitted).   Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted).  "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice."  *Id*.

Moreover under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence "as of the time the

6

state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks and emphasis omitted); *see also Pinholster*, 563 U.S. at 182 ("State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision.") (internal quotation marks omitted).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15 (internal quotation marks and citation omitted). "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 565 U.S. 65, 72 (2011) (per curiam).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Instead, the state court's "application must be

7

objectively unreasonable." *Id.* That distinction creates "a substantially higher threshold" to obtain relief than de novo review. *Id.* A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Etherton*, 136 S. Ct. at 1152.

"It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). And federal court of appeals precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (providing that absent a decision by the Supreme Court addressing "the specific question presented by [a] case" a federal court cannot reject a state court's assessment of claim). And, as the Supreme Court recently held, where no Supreme Court cases confront "the specific question presented" by the habeas petitioner, "the state court's decision [cannot]

8

be contrary to any holding from this Court." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam) (internal quotation marks and citation omitted).

Further, the Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [it] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions. *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

Moreover, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 562 U.S. at 102. This standard protects against intrusion of federal habeas review upon "both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id.* at 103 (internal quotation marks and citation omitted).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (internal quotation marks and citation omitted).  To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

The burden of providing a petitioner a new trial "should not be imposed unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012).

The Supreme Court has also instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme

10

Court of California's summary denial of Hinojosa's petition was therefore on the merits."). "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks and citation omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citation omitted).

Finally, the petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

# ARGUMENT

I. **A State prisoner challenging his conviction must file a federal habeas petition within one year of the conclusion of direct review or the expiration of time for seeking direct review. Here, Barnes filed the petition 3,068 days after the statute of limitations expired, and has failed to demonstrate that extraordinary circumstances justify equitable tolling. The petition should be dismissed under Habeas Rule 4 as untimely.**

## A. Discussion of controlling authority

Habeas Rule 4 provides that the court can dismiss a habeas petition if it determines that the petitioner is plainly not entitled to relief. And the State can move to dismiss untimely petitions citing Habeas Rule 4. *See Harrison v. Galanza*, No. C 98-3371, 1999 WL 58594, at *1 (N.D. Cal. Feb. 4, 1999).

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for a one-year statute of limitations after finalization of direct review:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of time for seeking such review;

12

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was originally recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

AEDPA governs the filing date for habeas petitions filed after AEDPA's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The statute of limitations is tolled statutorily by a properly filed motion for post-conviction review or is equitably tolled by the court under limited circumstances. 28 U.S.C § 2244(d)(2).

Where a petitioner appeals to the Michigan Supreme Court, but does not petition the United States Supreme Court for a writ of certiorari, his judgment of conviction is finalized when the time for taking an appeal to the United States Supreme Court expires. That time is 90 days after the Michigan Supreme Court's decision. Sup. Ct.

13

R. 13.  The one-year habeas statute of limitations commences running at that time.  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

But when, as here, a petitioner fails to seek direct review of his judgment of conviction after a no-contest plea, his judgment of conviction is finalized when the time for filing a delayed application for leave to appeal to the Michigan Court of Appeals expires.  The time to file such an application is one year after the decision if the decision is dated before September 1, 2011, but it is only six months after the decision if the decision is dated September 1, 2011 or afterward.  Mich. Ct. R. 7.205(G)(3) (amended 2011).  The one-year habeas statute of limitations commences running at that time.  *Bronaugh*, 235 F.3d at 283 (holding that the limitations period commences the day after the state-court conviction becomes final).

A petitioner may challenge the validity of the judgment of conviction by filing a motion for relief from judgment under the terms in subchapter 6.500 of the Michigan Court Rules.  A properly filed application for post-conviction or other collateral review tolls the running of the one-year habeas statute during the pendency of that application.  § 2244(d)(2).  "And an application is 'properly filed' when

14

its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). However, a petitioner receives tolling for the time that he could have, but did not timely file, an appeal of the denial of his motion in the state courts. *Holbrook v. Curtin*, 833 F.3d 612, 615–18 (6th Cir. Aug. 15, 2016).

When the habeas statute of limitations has already expired, a motion for relief from judgment "does not reset the date from which the one-year statute of limitations begins to run." *Johnson v. Hendricks*, 314 F.3d 159, 161-62 (3d Cir. 2002); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Neal v. Bock*, 137 F. Supp. 2d 879, 884 (E.D. Mich. 2001). This is because there is no remaining period to be tolled. *Smith v. Stegall*, 141 F. Supp. 2d 779, 782-83 (E.D. Mich. 2001).

After completion of state court collateral review, the statute of limitations is not tolled during the pendency of a certiorari petition in the United States Supreme Court seeking review of the denial of state post-conviction relief. *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

### B.   Discussion of facts and procedural history

The facts in this case reveal an untimely filing of the habeas

petition:

1.   On May 12, 2006, Barnes was convicted following a no-contest plea of first-degree CSC involving a person under 13 years old (Mich. Comp. Laws § 750.520b(1)(a)).  The trial court sentenced Barnes on June 14, 2006 to 7 to 20 years in prison.

2.   Barnes did not file an application for leave to appeal or a delayed application for leave to appeal in the Michigan Court of Appeals.

3.   On June 21, 2011, Barnes filed with the trial court a motion for relief from judgment.  (6/21/11 Mot. for Relief from J.)  The trial court denied this motion on November 14, 2011.  (11/14/11 Wayne Cir. Ct. Order at 8.)  On October 21, 2014, the trial court reissued the order, again denying Barnes' motion for relief from judgment.  (10/21/14 Wayne Cir. Ct. Order at 8.)

4.   On November 7, 2014, Barnes filed an application for leave to appeal in the Michigan Court of Appeals.  On December 19, 2014, the Michigan Court of Appeals denied Barnes' application.  (12/19/14 Mich. Ct. App. Order.)  Barnes applied for leave to appeal to the Michigan Supreme Court.  On November 24, 2015, the Michigan Supreme Court denied Barnes' application.  *People v. Barnes*, 871 N.W.2d 166 (Mich. 2015) (unpublished table decision).

5.   The habeas petition now before this Court is dated October 27, 2016, and was filed in this Court on November 7, 2016.

C.    Argument

Barnes' habeas petition is untimely.  The petition was not filed within the one-year statute of limitations, and Barnes is not entitled to equitable tolling.

1.    **Barnes is not entitled to statutory tolling because his state-court collateral attack was filed after the one-year statute of limitations expired.**

In this case, the expiration of time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A) was June 14, 2007—one year after the trial court issued its judgment of conviction on June 14, 2006.  Mich Ct. R. 7.205(G)(3) (amended 2011).  Since this date is after the enactment of AEDPA, the period of limitations began running the next day, June 15, 2007.  Barnes then had one year, until June 14, 2008, within which to file the petition, or to instead properly file an application for state post-conviction or other collateral review, which would toll the one-year statute of limitations period.

Barnes filed a motion for relief from judgment on June 21, 2011— 1,101 days (3 years and 6 days) *after* the statute of limitations had already expired.  Barnes' untimely motion did not toll or restart the

running of the statute of limitations. Barnes filed the habeas petition on November 7, 2016.

At the time Barnes filed his petition, *more than 8 years (or 100 months and 24 days) had passed since the statute of limitations had expired*.

Barnes has not shown, or even alleged, that §§ 2244(d)(1) (B), (C), or (D) apply in this case.  And they do not.  No state-created impediment prevented Barnes from filing timely.  28 U.S.C. § 2244(d)(1)(B).  Barnes is not seeking the retroactive application of a recently recognized constitutional right.  § 2244(d)(1)(C).  And Barnes does not allege that the factual predicate of the claims could not have been discovered before the expiration of time for seeking direct review. § 2244(d)(1)(D).

## 2.   Barnes is not entitled to equitable tolling

While Barnes has failed to demonstrate entitlement to "statutory tolling" to avoid dismissal, he can still avoid dismissal of the habeas petition by demonstrating that "equitable tolling" applies to this case. But Barnes has failed to do so.

### a.   The law of equitable tolling

The Supreme Court has held that the habeas statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010).  Equitable tolling is available in habeas challenges to state court convictions only when a litigant can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way . . . .'" *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *accord Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (holding that *Holland* replaced the 5-part inquiry of *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001)).

In order to establish entitlement to equitable tolling, the petitioner bears the burden of demonstrating *both Holland* factors. *Hall*, 662 F.3d at 750; *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  Moreover, equitable tolling should only be granted "sparingly." *Robertson*, 624 F.3d at 784 (citations omitted).  Ignorance of the law, illiteracy, and lack of legal assistance do not amount to grounds for equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to warrant equitable

tolling.") (internal quotation marks and citation omitted); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("[I]nmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations."); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (Lack of "professional legal assistance [is] not an extraordinary circumstance which would toll the statute of limitations."); *accord Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal assistance do not justify tolling).

A petitioner may also pass through the "impediment" of the statute of limitations if he or she can *prove* actual innocence. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in the light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Additionally, the federal habeas court "should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably

shown." *McQuiggin*, 133 S. Ct. at 1928. In other words, the court "may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of . . . the evidence of actual innocence." *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332) (internal quotation marks omitted). For example, if a petitioner waited until an elderly witness died before collaterally attacking his conviction, the timing "should seriously undermine the credibility of the actual-innocence claim." *McQuiggin*, 133 S. Ct. at 1936. But the Supreme Court cautioned: "tenable actual-innocence gateway pleas are rare . . . ." *Id.* at 1928.

### b. Barnes has not shown entitlement to equitable tolling under *Holland* or *McQuiggin*

Barnes is not entitled to equitable tolling under *Holland*. Barnes did not diligently pursue his rights regarding this petition, nor has Barnes shown that some extraordinary circumstance stood in his way.

At nearly every level of his prosecution, Barnes has demonstrated an unwillingness to take advice from and work with his variety of retained and appointed attorneys. In fact, he was appointed *six* different appellate attorneys in the state court following his conviction.

21

Three of them found no appealable issues, did not file an appeal or a post-conviction motion, and requested to withdraw as Barnes' counsel. (5/23/07 Mot. to Vacate Order of Appointment of Appellate Counsel, attached as Appendix A; 12/19/07 Mot. to Withdraw as Appellate Counsel, attached as Appendix B; 3/30/09 Mot. to Vacate Order of Appointment of Appellate Counsel, attached as Appendix C.)  These attorneys correctly recognized that no federal or state law would provide him relief on any issue.  Notably, though, Barnes' third appellate attorney did, in fact, begin the process of filing a motion to withdraw Barnes' plea.  (2/3/09 Mot. to Withdraw as Appellate Counsel, ¶ 5, p 2, attached as Appendix D.)  But Barnes refused to sign an affidavit to go along with the motion, stating that he needed more time to prepare other unknown issues.  (*Id.*, ¶ 6, p 2.)  He then had no further contact with the attorney.  (*Id.*, ¶ 7, p 2.)  Barnes' failure to cooperate and diligently pursue his rights during the appointment of his third appellate attorney delayed appellate review of his case for over a year.  Thus, he did not diligently pursue his rights.

And even if the other attorneys acted improperly by not filing a requested appeal (a point the State does not concede), it does not excuse

the five-year delay between his judgment of conviction and when he first raised the issue. And it does not excuse Barnes' inability to cooperate with at least one of his attorneys who was working with him to pursue the issue. He has not shown that extraordinary circumstances stood in his way, and he is not entitled to equitable tolling under *Holland*.

Barnes is also not entitled to equitable tolling under *McQuiggin* because, while alleging actual innocence, Barnes does not support that claim with any new evidence. Thus, Barnes has not proffered any evidence to prove actual innocence under *McQuiggin*.

As noted above, equitable tolling should only be granted "sparingly." Barnes has failed to meet his burden of showing that he is entitled to equitable tolling. The untimely petition should therefore be dismissed under Habeas Rule 4.

## II.   Barnes' claim is procedurally defaulted for two reasons. Thus, he is not entitled to habeas relief.

Barnes failed to comply with two distinct procedural rules. First, he failed to raise his claim on direct review. The state appellate courts relied on this procedural rule when they declined to review the issue.

Second, Barnes did not fairly present his specific claim to all levels of the state appellate system.  Although he filed a motion for relief from judgment claiming his trial counsel was ineffective, he did not raise the specific reasons for ineffectiveness that he now raises in his habeas petition.  These two reasons constitute procedural default and preclude habeas review.

### A.  Barnes did not properly raise his claim on direct review.

To the extent a petitioner deprives the state court of the opportunity to review his claims by failing to follow reasonable state-court procedures, review of the claims is barred.  "[P]rocedural default results where three elements are satisfied:  (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  In this case,

Barnes's claim of ineffective assistance of counsel is procedurally

defaulted because he did not raise it on direct appeal.

Barnes failed to comply with a state procedural rule that requires

defendants to raise all claims on direct appeal.  The last state court to

issue a reasoned opinion on his claim was the Michigan Court of

Appeals, which denied relief because Barnes failed to demonstrate

"good cause" for failing to raise the claim on direct appeal and did not

establish that good cause should be waived.  Mich. Ct. R. 6.508(D)(3)(a).

This reason for denying relief constitutes a procedural default.

### B.  Barnes did not present through the state appellate system his claim that counsel was ineffective for allowing him to enter an involuntary plea.

Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust remedies available in the state courts.  28

U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To

fulfill the exhaustion requirement, the prisoner must have fairly

presented the federal claims to all levels of the state appellate system.

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *see also* 28 U.S.C. §

2254(c) ("An applicant shall not be deemed to have exhausted the

remedies available in the courts of the State, within the meaning of this

section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

A habeas petitioner is required to present to the state courts "the same specific claims of ineffective assistance [of counsel] made out in the habeas petition." *Wyldes v. Hundley*, 69 F.3d 247, 253 (8th Cir. 1995). *See also Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir. 1998) (finding an ineffective-assistance-of-counsel claim procedurally defaulted where petitioner advanced a new theory in federal court which was distinct from the theory considered and rejected in state court). Fair presentation requires that discrete claims of ineffective assistance of counsel be individually exhausted. *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005). If an ineffective-assistance-of-counsel claim in a habeas petition is different than the claim presented during a petitioner's direct appeal, such a claim has not been fairly presented to the state courts. *See Caver v. Straub*, 349 F.3d 340, 346–47 (6th Cir. 2003). *See also Brandon v. Stone*, 226 F. App'x 458, 459 (6th Cir. 2007).

If the prisoner fails to present his claims to the state courts, but has no remaining state-court remedy, the claims are considered

exhausted, but procedurally defaulted.  *See Gray v. Netherland*, 518

U.S. 152, 161-62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th

Cir. 2010).

      Although Barnes raised his ineffective-assistance-of-counsel claim

in his motion for relief from judgment, he never presented his specific

claim that counsel was ineffective for allowing Barnes to enter an

involuntary plea.  In his state-court motion, Barnes claimed that his

trial counsel was ineffective for failing to investigate his case, which,

because he was unable to make an informed and intelligent plea

decision, rendered his plea involuntary.  (6/21/11, Mot. for Relief from

J., pp 3, 4.)  In his habeas petition, however, Barnes claims that his

trial counsel was ineffective because she failed to "protect[ ] his rights

from the trial court's coercive and threatening conduct at the plea

hearing, where her silence was a concurrence with the court's behavior."

(11/7/16 Petition, at 38.)  Because his specific ineffective-assistance-of-

counsel claim was not fairly presented to all levels of the state appellate

system, he has not fulfilled the exhaustion requirement.  *Duncan*, 513

U.S. at 365-66 (1995).  But because he failed to file a direct appeal and

has already been denied relief pursuant to Mich. Ct. R. 6.508(D), he has

no remaining state-court remedy to raise this specific claim. *See* Mich.

Ct. R. 6.501; Mich. Ct. R. 6.508(G)(2). Thus, while technically

exhausted, this specific claim is procedurally defaulted.

### C.     Because he has procedurally defaulted his claim, Barnes is not entitled to habeas review of the issue.

A State prisoner who fails to comply with a State's procedural rule

waives the right to federal habeas review absent a showing of cause for

noncompliance and actual prejudice resulting from the alleged

constitutional violation, or a showing of a fundamental miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991); *Gravley v.*

*Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a

petitioner must establish that some external impediment frustrated his

ability to comply with the state's procedural rule. *See, e.g.*, *Murray v.*

*Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680,

690-91 (6th Cir. 2007). A petitioner must present a substantial reason

to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see*

*also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim

that a document was concealed by officials). One recognized reason

includes attorney error rising to the level of ineffective assistance of

counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). This procedural default is not excused by the ineffective-assistance-of-appellate-counsel claim as explained hereafter.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

To show that his case is the "extraordinary" one warranting application of this exception, Barnes must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Barnes has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a

result of the Court's failure to consider the substantive merits of Barnes' claim.  The claim is procedurally defaulted, and habeas relief is barred.

### D.    The procedural default is not excused by the ineffective assistance of appellate counsel.

This Court should not excuse the procedural default.  Barnes cannot demonstrate that his appellate attorneys' performance rose to the level of ineffective assistance of counsel.

### 1.    The law regarding the ineffective assistance of appellate counsel

"[T]he Constitution does not require States to grant appeals as of right to criminal defendants."  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). But "each State has created mechanisms for both direct appeal and state postconviction review, even though there is no constitutional mandate that they do so."  *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001) (citation omitted).  Under the Sixth and Fourteenth Amendments, a state criminal defendant has a right to the effective assistance of appellate counsel on his first appeal as of right. *Evitts,* 469 U.S. at 393–94.

As with an ineffective-assistance-of-trial-counsel claim, an ineffective-assistance-of-appellate-counsel claim requires a petitioner to show deficient performance and resulting prejudice. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), (applying *Strickland v. Washington*, 466 U.S. 668 (1984), framework to an ineffective-assistance-of-appellate-counsel claim). *See also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*).

The "deficient performance" prong of the two-part *Strickland* test requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of the petitioner's claims. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). To be effective, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 285.

A petitioner also must establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. *Mahdi v.*

31

*Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Appellate counsel can only be found to have provided ineffective assistance "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Thus, the ultimate question "is whether there was a reasonable probability that the appellate court ... would have granted the petitioner a new trial" had the issue been raised. *Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011) (quotation marks and brackets omitted). Petitioner is required to show that his appellate attorney was so thoroughly ineffective that defeat was "snatched from the hands of probable victory." *United States v. Morrow,* 977 F.2d 222, 229, (6th Cir. 1992) (en banc).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel, however, "may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,'" which is defined as an issue that was obvious from the trial record and would have resulted in

32

a reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003), *aff'd* 104 F. App'x 461 (6th Cir. 2004).  This is a heavy burden for Barnes to meet.

### 2. The performance of Barnes' appellate attorneys did not rise to the level of ineffective assistance.

Barnes unpersuasively claims that his appellate attorneys cumulatively denied him his right to appeal and that, because he was deprived of a stage in the judicial proceeding, he should be afforded the presumption of prejudice.  *Roe v. Flores-Ortega*, 528 US 470 (2000), which he cites as support, shows that he cannot be presumed prejudiced under the facts of this case.  In fact, in *Roe*, the Supreme Court noted that a petitioner must still demonstrate that he was prejudiced by showing that he would have appealed had his attorney not performed deficiently.  *Id.* at 484.  "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."  *Id.*  The Court held "that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult

with him about an appeal, he would have *timely* appealed." *Id.*
(emphasis added).

Here, even if the first appellate attorney would have taken steps
to raise his issue, Barnes would not have filed a timely appeal.
Although it appears his first two attorneys did not wish to raise a
meritless issue, his third attorney took the proper steps to appeal.
Specifically, the attorney prepared an affidavit to be attached to a
motion to withdraw his plea.  (2/3/09 Mot. to Withdraw as Appellate
Counsel, ¶ 5, p 2.)  But Barnes refused to sign the affidavit and then
failed to keep in contact with his attorney.  (2/3/09 Mot. to Withdraw as
Appellate Counsel, ¶¶ 6-7, p 2.)  Over six months elapsed from the time
counsel first met with Barnes to discuss this issue until the trial court
granted counsel's motion to withdraw.  (See 2/3/09 Mot. to Withdraw as
Appellate Counsel, ¶ 3, p 1; see also 3/11/09 Order Granting Mot.)
Barnes thus had plenty of time to review his attorney's work and
further contact him regarding his appeal.  Given this behavior, along
with his unwillingness to work with his trial attorney, there is no
indication that Barnes would have cooperated with his first appellate
attorney.  Had his first appellate attorney done what his third appellate

34

attorney did and prepare an affidavit for an appeal, Barnes would have continued to delay and operate by his own time schedule.  Because Barnes has not demonstrated that, but for counsel's deficient performance, he would have *timely* appealed, he was not prejudiced.

      **3.**    **Even if Barnes could show cause to excuse his first procedural default, he cannot excuse his second one.**

Even if Barnes could show that his appellate counsel were constitutionally ineffective, providing cause to excuse his *first* procedural default, that would not excuse his *second* procedural default, which arises from his failure to raise his claim in the state courts. "[T]he right to effective assistance of counsel is dependent on the right to counsel itself." *Evitts v. Lucey*, 469 U.S. 387, 396 n. 7 (1985). Because Barnes had no right to counsel on collateral review, he cannot show ineffective assistance of counsel for failing to raise this claim on collateral review.

   4.   **Even if this Court finds that Barnes' *appellate*
        attorneys were ineffective, he is not entitled to
        habeas relief.**

Even if this Court disagrees with the above analysis and finds

that the appellate attorneys in this case rendered ineffective assistance,

Barnes is not entitled to any habeas relief.  Importantly, Barnes does

not claim that he is being unconstitutionally detained due to a

constitutional error in his appellate proceedings.  Rather, he only

suggests that, because his appellate attorneys were ineffective, this

Court should excuse the procedural default and consider his claim on its

merits.  Thus, should this Court find ineffective assistance of appellate

counsel, the remedy is for this Court to review Barnes' ineffective-

assistance-of-trial-counsel claim.  But as noted below, that claim, when

reviewed on its merits, does not entitle Barnes to habeas relief.


III.  **Barnes is not entitled to habeas relief on his ineffective-
      assistance-of-counsel claim because his plea was
      voluntarily and knowingly made, the trial court did
      nothing to coerce his plea, and his trial counsel was not
      ineffective for not interjecting during the proper plea
      proceeding.**

Even if this Court does not dismiss the petition for failure to file

within the statute of limitations, or if it chooses to ignore or otherwise

bypass Barnes' two separate procedural defaults, he is not entitled to

36

habeas relief on his underlying ineffective-assistance-of-trial-counsel
claim.

## A.   Clearly established federal law regarding the ineffective assistance of counsel

A claim of ineffective assistance of counsel is governed by the
familiar standard set forth in *Strickland*.  "Surmounting *Strickland's*
high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371
(2010).  "Even under *de novo* review, the standard for judging counsel's
representation is a most deferential one."  *Richter*, 562 U.S. at 105.

To establish that he received ineffective assistance of counsel, a
petitioner must show, first, that counsel's performance was deficient
and, second, that he was prejudiced by counsel's action or inaction.
*Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland,*
466 U.S. at 687–88).  Further, "[j]udicial scrutiny of counsel's
performance must be highly deferential. . . . Because of the difficulties
inherent in making the evaluation, a court must indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance."  *Strickland*, 466 U.S. at 689.
"*Strickland* . . . calls for an inquiry into the objective reasonableness of

counsel's performance, not counsel's subjective state of mind." *Richter*, 131 S. Ct. at 790.

A lawyer does not perform deficiently or prejudice his client by failing to raise frivolous objections. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000); *Strickland*, 466 U.S. at 694. "Counsel cannot be ineffective for failing to object to what was properly done." *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005). "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). "An attorney is not required to present a baseless defense or to create one that does not exist." *Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986).

The second *Strickland* prong, prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Richter*,

131 S. Ct. at 792 (citation omitted). "The likelihood of a different result must be substantial, not just conceivable." *Id*.

The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." *Murray v. Carrier*, 477 U.S. 478, 494 (1986), quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). The defendant must "affirmatively prove," not just allege, prejudice. *Strickland*, 466 U.S. at 693. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Richter*, 131 S.Ct. at 792). *See further United States v. Boone*, 62 F3d 323, 327 (10th Cir. 1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice.").

To demonstrate prejudice in a case where a petitioner was convicted after a jury or bench trial, the reviewing court must determine, based on the totality of the evidence before the factfinder,

"whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Because both prongs must be satisfied to establish ineffective assistance, if a petitioner cannot satisfy one prong, the other need not be considered. *Id.* at 697.

Moreover, criminal defendants are entitled to the effective assistance of counsel during the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).

### B.    Analysis

Barnes' counsel's performance was objectively reasonable. According to Barnes, his counsel should have somehow interjected into the court's lengthy discussions surrounding the plea deal. But the court properly obtained a voluntary plea from Barnes.

40

A plea must be voluntarily and knowingly made in order to satisfy the dictates of due process.  *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)).  The defendant must be aware of the "relevant circumstances and likely consequences." *Hart*, 927 F.2d at 257; *King*, 17 F.3d at 153.  In general, this means that he must be aware of the maximum sentence that may be imposed. *King*, 17 F.3d at 154.  Further, the "agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant."  *Brady v. United States*, 397 U.S. 742, 750 (1970).  In other words, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

Michigan has adopted a specified procedure to be followed to ensure that a defendant's plea is understanding, voluntary, and accurate.  Mich. Ct. R. 6.302.  The Sixth Circuit has held "that where the [trial] court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's

inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)

(quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).

The trial court followed the required procedure during Barnes'

plea hearing.  The following detailed exchange took place:

THE COURT:  What your name [sic]?

BARNES:  Douglas Barnes.

THE COURT:  And you went to 12th grade?

BARNES:  Yes.

THE COURT:  Can you read and write the English
language?

BARNES:  Yes.

THE COURT:  And you understand you're charged with four
counts of criminal sexual conduct in the first degree.  You're
going to plea [sic] guilty to one with a sentence agreement of
7 to 20, restitution as determined.  You understand that?

BARNES:  Yes.

THE COURT:  That's just a constitutional provision.  You
understand that?

BARNES:  Yes.

THE COURT:  Is that your full and complete understanding
of the agreement?

BARNES:  Yes.

THE COURT:  You on probation or parole?

BARNES:  No.

THE COURT:  If you plead, you're not going to have a trial by jury, or by the court.  You won't be presumed innocent. The prosecutor won't have to establish your guilt through the presentation of evidence on each and every element beyond a reasonable doubt.

You won't be able to confront and question witnesses against you at trial through your lawyer, nor have the court compel witnesses for you to come to court and testify.  You won't be able to testify or not, or not have your silence used against you at trial because you're not having have [sic] trial.  You won't get those rights.  Do you understand that?

BARNES:  Yes.

THE COURT:  Any questions about any of those rights?

BARNES:  No.

THE COURT:  They're all on this form.  Do you understand that?

BARNES:  Yes.

THE COURT:  Pleading guilty—no contest is the same as guilty for this proceeding, but it can't be used against you elsewhere.  Do you understand that?

BARNES:  (Nodding) yes.

THE COURT:  You're waiving your right to appeal and your right to claim later this plea was a result of undisclosed threats or promises?  Do you understand that?

43

BARNES:  Yes.

THE COURT:  And your right to claim later this wasn't your idea to plea.  Do you understand that?

BARNES:  Yes.

THE COURT:  You can either get sentenced by me, who's taking the plea, or Judge Kenny.  Do you understand that?

BARNES:  Yes.

* * *

THE COURT:  Did you go over those rights on the paper with your lawyer?

BARNES:  Yes.

THE COURT:  You understand them?

BARNES:  Yes.

THE COURT:  Do you have any question about them?

BARNES:  No.

THE COURT:  Is that your signature on the document?

BARNES:  Yes.

THE COURT:  Anybody promise you anything for this plea other than what I've just said?

BARNES:  No.

THE COURT:  Anybody threaten you or coerce you, or pressure you to get you to plea?

BARNES:  No.

THE COURT:  You're pleading freely and voluntarily, knowingly and intelligently?

BARNES:  Yes, yes.

THE COURT:  And you understand the consequences of the plea?

BARNES:  Yes.

* * *

THE COURT:  I'm showing you a, I've already showed you the plea form.  Is that your signature?

BARNES:  Yes.

THE COURT:  Do you want me to accept your plea?

BARNES:  Yes.

(5/15/06 Plea Tr. at 24-29.)  Given this colloquy, it is clear that Barnes'

plea was voluntarily and knowingly made.  While Barnes takes issue

with the discussions that occurred before this exchange, by

acknowledging that his plea was voluntary, he agreed that none of the

court's prior comments coerced him into pleading.

And, regardless, nothing that the court said or did before the plea

rendered it involuntary.  Barnes insisted on obtaining new counsel to

represent him, but he raised this request right before he was to plead and less than two weeks before his trial was to begin. (See 5/12/06 Plea Tr. at 18.) Ultimately, the court gave Barnes three options—proceed with current counsel, obtain new counsel to be ready by the scheduled trial date, or represent himself. (5/12/06 Plea Tr. at 19.) Even though the court properly laid out his options, Barnes insisted on an adjournment. (5/12/06 Plea Tr. at 20.) The court then painstakingly explained the process of plea deals, the job of an attorney, and the consequences of going to trial. (5/12/06 Plea Tr. at 20-23.) Knowing that the court was not buying his delay tactic, Barnes subsequently decided to plea. (5/12/06 Plea Tr. at 23.) Nothing in these discussions rendered the plea involuntary in any way.

Because his plea was voluntary and everything the trial court did was proper, there was nothing more for counsel to do. Again, "[c]ounsel cannot be ineffective for failing to object to what was properly done." *Sanders*, 404 F.3d at 986.

Additionally, because the trial court adequately ensured that Barnes' plea was voluntary, he suffered no prejudice. Even if counsel had interjected, it was still ultimately Barnes' choice whether to plea.

Irrespective of counsel's performance, Barnes still had the choice of whether to plead no contest and be sentenced to a 7-year minimum sentence or proceed to trial and face up to life imprisonment.  In answering the court's questions pursuant to Michigan Court Rule 6.302, Barnes made it clear that he wanted to plead no contest to first-degree CSC.

Further, Barnes may be his own worst enemy because if he were to prevail he would end up "worse off."  *See Padilla*, 559 U.S. at 373 ("Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a less favorable outcome for the defendant.")  Barnes faced four counts of first-degree CSC involving a person under the age of 13.  (3/9/06 Am. Information.)  First-degree CSC is punishable by up to life imprisonment.  Mich. Comp. Laws § 750.520b(2)(a).  In fact, at the plea hearing, the trial court noted that if Barnes was found guilty at trial and sentenced within the guidelines, his minimum sentence would be anywhere from 9 to 15 years.  (5/12/06 Plea Tr. at 8.)  Of course, the

court could also impose a minimum sentence above the guidelines, or his sentence could be increased up to life.  In other words, following a trial, Barnes could have been given a far worse sentence.  And, he likely would have, given that his victim had already testified at the preliminary examination to at least four acts of CSC (2/15/06 Prelim. Examination Tr. at 19-23) and that DNA evidence supported the victim's testimony (5/12/06 Plea Tr. at 28).  He is fortunate that he only received 7 to 20 years in prison for this deplorable offense.

## CONCLUSION

Barnes' claim is barred by the applicable statute of limitations as detailed above.

Barnes procedurally defaulted his claim.  He has not shown cause and prejudice to excuse the default.  In addition, he has not shown failure to review the claim would result in a fundamental miscarriage of justice.  Accordingly, as detailed above, habeas review of his claim should be barred.

The state courts' rejection of Barnes's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Barnes was "entitled to a fair trial but not a perfect one."  *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial.").  The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the

correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability.

The State also contends that Barnes has not demonstrated entitlement to discovery. Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a). "Conclusory

50

allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Barnes has not met this burden.

If this Court denies the petition, the State asserts that Barnes is also not entitled to a certificate of appealability (COA) so as to proceed further.  In order to obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the petitioner is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

51

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack*, 529 U.S. at 483-84. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

52

## RELIEF

For the reasons stated above, this Court should deny the petition. The Court should also deny Barnes any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Jared D. Schultz

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
SchultzJ15@michigan.gov
P80198

Dated: May 30, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> HONORABLE JUDITH E. LEVY
> MAGISTRATE ANTHONY P. PATTI

and I hereby certify that Ann E. Webb has mailed by United States Postal Service the papers to the following non-ECF participant:

> DOUGLAS A. BARNES, 606739
> WEST SHORELINE CORRECTIONAL FACILITY
> 2500 S. SHERIDAN DRIVE
> MUSKEGON HEIGHTS, MI 49444

Respectfully submitted,

Bill Schuette
Attorney General

s/Jared D. Schultz

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
SchultzJ15@michigan.gov
P80198