UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DOUGLAS A. BARNES,

        Petitioner,

                          CASE NO. 5:16-CV-13944
v.                         HONORABLE JUDITH E.
                         LEVY

SHIRLEE HARRY,

        Respondent.

_____/

**OPINION AND ORDER DISMISSING THE HABEAS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL [1]**

## I.    INTRODUCTION

Michigan prisoner Douglas Barnes ("Petitioner"), through counsel, filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. (ECF No. 1.) Following a no-contest plea in the Wayne County Circuit Court, Petitioner was convicted under M.C.L. § 750.520b(1)(a) of first-degree criminal sexual conduct involving a person under 13 years old.

(ECF Nos. 1-2, PageID.59; 1-3, PageID.61-62.) Petitioner was sentenced to 7 to 20 years imprisonment in 2006. (*Id.*)

In his habeas petition, Petitioner raises the following claims:

The state trial and appellate courts erred in denying [Petitioner's] motion for relief from judgment because he was denied the effective assistance of trial counsel and he had good cause for failing to file an application for leave to appeal based upon the ineffective assistance of appellate counsel.

(ECF No. 1, PageID.12.) The government, in its response, asserts that Petitioner's habeas petition is untimely under the one-year statute of limitations applicable to federal habeas actions. (ECF No. 8, PageID.254-55.) The government additionally asserts that Petitioner's claims are procedurally defaulted and/or lack merit. (*Id.*)

After careful review, the Court concludes that the habeas petition is untimely and must be dismissed. The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal must be denied.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner's conviction arises from his guilty plea to the sexual assault of a five-year-old girl at a residence in Romulus, Michigan in 2005. (ECF No. 3-1, PageID.241-243.) Petitioner pleaded guilty to acts of fellatio, cunnilingus, and sexual penetration. (*Id.*) The victim, in her testimony, described areas in the home where she spit out Petitioner's semen. (*Id.* at PageID.242.) The government tested samples from these areas and found that the samples contained Petitioner's DNA. (*Id.*)

On May 12, 2006, Petitioner pleaded guilty to one count of first-degree criminal sexual conduct in exchange for the dismissal of additional charges and an agreement that he would be sentenced to a term of 7 to 20 years imprisonment, which was below the recommended minimum sentence guideline range of 9 to 15 years imprisonment and the possible maximum sentence of life imprisonment. (*Id.* at PageID.241-243.) On June 14, 2006, the trial court sentenced Petitioner to 7 to 20 years imprisonment as agreed upon in his plea agreement. (ECF No. 9-4, PageID.414.)

Following sentencing, Petitioner requested appellate counsel. (ECF No. 2-3, PageID.129.) On August 3, 2006, the trial court appointed Daniel

Rust ("Rust") as appellate counsel. (ECF No. 1-7, PageID.72.) On May 10, 2007, Rust visited Petitioner in prison and informed him that he did not have a legal basis to challenge his plea or sentence. (*Id.*) On May 23, 2007, Rust moved to withdraw as counsel. (*Id.*) On May 31, 2007, the trial court granted that motion and appointed Ronald Ambrose ("Ambrose") as second appellate counsel. (ECF No. 1-8, PageID.76.)

On October 1, 2007, Ambrose visited Petitioner. (ECF No. 2-6, PageID.142.) According to Petitioner, Ambrose later mailed Petitioner a letter stating that Petitioner had no arguable issues and encouraging Petitioner not to appeal. (*Id.*) On December 19, 2007, Ambrose moved to withdraw as counsel, stating that that "counsel is of the opinion that there are no arguable issues on appeal." (ECF No. 10, PageID.556.) Two days later, Petitioner wrote Judge Ewell a letter stating that he was "not willing to give up [his] right to appeal," inquiring as to how much time remained to file an appeal, and asking that new counsel be appointed. (ECF No. 2-6, PageID.142.)

On January 8, 2008, the trial court granted Ambrose's motion to withdraw. On January 16, 2008, the court appointed Phillip Comorski

("Comorski") as third appellate counsel. (ECF No. 1-9, PageID.78.) On August 2, 2008, Comorski visited Petitioner to discuss his case and subsequently prepared an affidavit for Petitioner's signature. (ECF No. 1-10, PageID.80-81.) The affidavit raised claims about trial counsel's alleged coercive and ineffective conduct during the plea proceedings. (*Id.*) However, on November 1, 2008, Petitioner sent a letter to Comorski stating that he would not sign the affidavit because he was "preparing other issues for his case" and needed more time to do so. (*Id.* at PageID.81.) On February 3, 2009—after three months without communication from Petitioner—Comorski moved to withdraw as counsel because he was "unable to ascertain [] what these 'issues' [were]" and he "[could] not determine whether [Petitioner] wishe[d] to pursue his appeal in this case." (*Id.*) On March 11, 2009, the trial court granted that motion and appointed Frederick Finn ("Finn") as fourth appellate counsel. (ECF No. 1-11, PageID.85.)

On March 24, 2009, Finn visited Petitioner to discuss the case. (ECF No. 1-12, PageID.87.) On March 30, 2009, Finn moved to withdraw as counsel, stating that he told Petitioner he "[found] no legitimate

grounds for a plea withdrawal or an appeal of the sentence imposed . . . [Petitioner] refused to sign a withdrawal form, and refused to advise defense counsel as to how he wished to proceed in this case. [Petitioner] further stated that he intended to pursue this case with another attorney." (ECF No. 10, PageID.559.) Sometime thereafter, the trial court apparently granted that motion and appointed Lawrence Bunting ("Bunting") as fifth appellate counsel. (*See* ECF No. 1-13, PageID.91-92.)

On June 23, 2009, Petitioner signed an affidavit alleging that trial counsel was ineffective and coercive during the plea proceedings, that his plea was involuntary, and that he was innocent and wanted a trial. (ECF No. 9-11, PageID.520-521.) Though Petitioner later attached this affidavit to his 2014 filing in the Michigan Court of Appeals, (*id.*), it is unclear what became of this affidavit immediately after it was executed in 2009. Additionally, the record shows no action by Petitioner from July 2009 to May 2011.

On June 21, 2011, Bunting filed a motion for relief from judgment with the state trial court on the following grounds: 1) trial counsel was ineffective for failing to investigate Petitioner's case or inform him of the

elements of the offense, rendering Petitioner's plea involuntary; 2)
Petitioner is actually innocent because the DNA evidence against him
may not have been reliable; and 3) Petitioner's appellate attorneys
refused to pursue his appeal in a timely manner. (ECF No. 1-13.) On
November 14, 2011, the trial court denied Petitioner's motion. (ECF No.
1-14, PageID.110.) The trial court held that Petitioner had failed to show
that either trial or appellate counsel was ineffective.[1] (*Id.* at PageID.108-
109.) The court further held that Petitioner had failed to present evidence
of his actual innocence under Michigan Court Rule 6.508(D), noting that
this issue could have been raised on appeal. (*Id.* at PageID.105-106.)

Bunting did not pursue a timely appeal of the trial court's decision.
Bunting's failure to appeal on Petitioner's behalf earned him a reprimand

---

[1] As to trial counsel, the court acknowledged that "defendant had difficulty
getting along with his lawyer." (ECF No. 1-14, PageID.109.) However, the court
refused to find counsel's preparation and research to be ineffective, because
"[Petitioner] admitted he ripped up the discovery and reports in counsel's presence,
after she provided them to [Petitioner], an obvious impediment to review. [Petitioner]
cannot complain of alleged harm he causes." (*Id.*) The court additionally noted that
"[Petitioner] asserts trial counsel did not investigate the case, but doesn't indicate
what she should have done." (*Id.*) As to appellate counsel, the judge noted that
"counsel may make strategic decisions as to which issues are raised on appeal," and
that it was not ineffective assistance for Petitioner's lawyers to refuse "to raise every
non-frivolous issue demanded by defendant on appeal." (*Id.* at PageID.107.)

from the Michigan Appellate Assigned Counsel System in November 2013. (ECF No. 2, PageID.112-113.)

On January 8, 2014, the trial court removed Bunting as counsel. (ECF No. 9-7, PageID.450.) On February 3, 2014, the trial court appointed Lee Somerville ("Somerville") as sixth appointed counsel. (ECF No. 2-1, PageID.115.) Somerville moved for re-issuance of the trial court's order denying relief from judgment, which the trial court granted. (ECF No. 9-7, PageID.447-448.) On October 21, 2014, the trial court re-issued its order. (ECF No. 9-9, PageID.469.) On November 7, 2014, Somerville then filed an application for leave to appeal the denial of relief with the Michigan Court of Appeals. (ECF No. 2-3, PageID.136.) On December 19, 2014, the Court of Appeals denied leave because Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." The Court of Appeals noted that Petitioner "allege[d] grounds for relief that could have been raised previously," that he "failed to establish good cause for failing to previously raise the issues," and that he "has not established that good cause should be waived" under M.C.R. 6.508(D)(3)(a). (ECF No. 2-4, PageID.138.) Petitioner then filed an

application for leave to appeal with the Michigan Supreme Court, which was denied on November 24, 2015. (ECF No. 2-5, PageID.140.) The Supreme Court noted that Petitioner "failed to meet his burden of establishing entitlement to relief under M.C.R. 6.508(D)." (*Id.*)

Petitioner, through counsel, filed his federal habeas petition on November 7, 2016. (ECF No. 1.) Respondent filed an answer to the habeas petition and the state court record on May 30, 2017. (ECF No. 8.)

## III. DISCUSSION

### A. The AEDPA One-Year Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs habeas petitions filed after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA mandates a one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. The statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Federal courts must dismiss habeas petitions filed outside the proscribed time period. *See Patterson v. Lafler*, 455 Fed. Appx. 606, 608 (6th Cir. 2012); *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir.

-11-

2000) (overruled on other grounds) (dismissing case filed thirteen days late); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

A preliminary question in this case is whether Petitioner has complied with the one-year statute of limitations. "[D]istrict courts are permitted . . . to consider sua sponte, the timeliness of a state prisoner's federal habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). Petitioner has not complied with the statute of limitations, and his application is therefore untimely and must be dismissed. *Lafler*, 455 Fed. Appx. at 608.

Petitioner's conviction became final after AEDPA's April 24, 1996 effective date, so AEDPA's time limits apply. *Murphy*, 521 U.S. at 336. The trial court sentenced Petitioner on June 14, 2006. Petitioner did not file a direct appeal in the state courts. Under AEDPA, Petitioner's conviction therefore became final "when the time for pursuing direct review . . . in state court[] expire[d]." 28 U.S.C. § 2244(d)(1)(a); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Under then-existing Michigan law, Petitioner had one year—until June 14, 2007—to seek leave to appeal in the state courts. *See* M.C.R.

7.205(G)(3) (amended to six months in 2011). He did not do so. Consequently, Petitioner's conviction became final on June 14, 2007. Petitioner was thus required to file his federal habeas petition by June 14, 2008, excluding any time that would have been statutorily "tolled" while a properly filed application for state post-conviction or collateral review pended in state court. 28 U.S.C. § 2244(d)(2).

Petitioner is not entitled to any statutorily tolled time. Petitioner did not file his motion for relief from judgment with the state trial court until June 21, 2011—more than three years after the one-year limitations period had expired. A state court post-conviction motion filed following the expiration of the limitations period cannot toll that period, because there is no time remaining to be tolled. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not [] 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run."); *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Thus, by the time that Petitioner filed his habeas petition on November 7, 2016, more than eight years had passed since the statute of limitations had expired. Because Petitioner is not arguing that any of the other 28 U.S.C. § 2244(d)(1) factors apply to toll his time,[2] and because Petitioner is not entitled to tolled time under § 2244(d)(2), Petitioner's habeas petition is untimely and must be dismissed. *Lafler*, 455 Fed. Appx. at 608.

## B. Equitable Tolling of the One-Year Limitation

The one-year AEDPA statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). A habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010). Courts can

---

[2] Petitioner is not alleging that a state-created impediment prevented him from timely filing, § 2244(d)(1)(B), nor that a new constitutional right applies retroactively, § 2244(d)(1)(c), nor that the factual predicate of Petitioner's claims could not have been discovered before the expiration of time to seek direct review. § 2244(d)(1)(d).

-14-

also grant equitable tolling based on a credible claim of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 399-400 (2013); *Lafler*, 455 Fed. Appx. at 609.

Habeas petitioners have the burden to demonstrate that they are entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

Here, Petitioner argues that he is entitled to equitable tolling because he diligently pursued his rights despite his appellate attorneys effectively abandoning him during his post-conviction period. Petitioner also argues that he is entitled to equitable tolling because he is actually innocent of the crimes to which he pleaded guilty. For the following reasons, Petitioner has not demonstrated that he diligently pursued his rights or that his attorneys abandoned him within the meaning of the equitable tolling doctrine. Additionally, Petitioner has not set forth a

credible claim of actual innocence. Petitioner's habeas petition is thus untimely and must be dismissed. *Lafler*, 455 Fed. Appx. at 608.

i. Equitable tolling based on attorney abandonment

Petitioner asserts that his one-year post-conviction period should be equitably tolled because his appellate attorneys were so dilatory that they effectively abandoned him during his filing period. (ECF No. 1, PageID.35.) However, it is well-settled that attorney miscalculation, missed deadlines, and other "garden variety" acts of negligence do not warrant equitable tolling. *See Holland*, 560 U.S. at 651-52; *Young v. Westbrooks*, 702 Fed. Appx. 255, 262 (6th Cir. 2017) (holding that missed deadlines, late filings, failure to raise "the best and most obvious issues," and lack of communication constitute negligence, not abandonment); *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) ("attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel"). Thus, to the extent that Petitioner asserts that delays by appellate counsel warrant equitable tolling, he is mistaken. Such delays,

at most, amount to negligence and are not extraordinary circumstances which justify equitable tolling of the one-year AEDPA period.

In contrast, "serious instances of attorney misconduct" may constitute an extraordinary circumstance which justifies equitable tolling. *Holland*, 560 U.S. at 652; *Lafler*, 455 Fed. Appx. at 609-10. In such a situation, counsel's conduct, or lack thereof, must be sufficiently egregious—akin to abandonment—to warrant equitable relief. *See Maples v. Thomas*, 565 U.S. 266, 281-82 (2012) (discussing *Holland* and ruling that attorney abandonment without notice may constitute cause to excuse a procedural default); *Lafler*, 455 Fed. Appx. at 610 (attorney incapacitation or abandonment may constitute an extraordinary circumstance). As the Sixth Circuit recently noted, "[t]he type of abandonment contemplated [for equitable tolling purposes] occurs when a petitioner is left without any functioning attorney of record." *Young*, 702 Fed. Appx. 225, 262 (6th Cir. 2017).

In this case, Petitioner fails to show that the three appellate attorneys who represented him during the relevant time period—from his June 2006 sentencing until the one-year period expired in June

2008—abandoned him. To the contrary, the record indicates that all three attorneys—Rust, who represented Petitioner from August 2006 to May 2007; Ambrose, who represented Petitioner from May 2007 to January 2008; and Comorski, who represented Petitioner from January 2008 to March 2009—presented Petitioner with a frank assessment of his case and, when the representation broke down, withdrew in accordance with proper state procedure.

The first two appellate attorneys, Rust and Ambrose, reviewed Petitioner's case, met with him, informed him that he did not have a basis for plea withdrawal or appeal, and then moved to withdraw as counsel shortly thereafter. (ECF Nos. 1-7, PageID.72; 206, PageID.142.) The third attorney, Comorski, reviewed Petitioner's case, met with him, and prepared an affidavit for Petitioner detailing the alleged coercive practices that Petitioner wanted to appeal. (ECF No. 1-10, PageID.80-81.) After Petitioner refused to sign the affidavit and neglected to follow up with Comorski for three months, Comerski joined his predecessors in withdrawing from the case. (*Id.* at PageID.81.)

-18-

Such conduct does not constitute abandonment and does not entitle

Petitioner to equitable tolling. All of Petitioner's attorneys met with him

and discussed the merits of his case with him. When counsel withdrew,

they did so by providing appropriate notice according to state procedure.

*See, e.g.*, *Maples*, 565 U.S. at 288-289 (finding abandonment when a

defendant's attorneys did not notify him before withdrawing from the

case, because if they had, "[the defendant] could have filed a notice of

appeal himself"); *Myers v. Osborne*, No. 17-5284, 2018 WL 4215638, at *3

(6th Cir. Apr. 12, 2018) ("Abandonment occurs where, having severed the

principal-agent relationship, an attorney no longer acts, or fails to act, as

the client's representative"); *Young*, 702 Fed. Appx. at 262 (no

abandonment when attorney called his client only one time with useful

information but was otherwise nonresponsive); *United States v. Ellison*,

No. 2-80084, 2014 WL 3548277, *1-2 (E.D. Mich. July 17, 2014) (no

equitable tolling where counsel did not complete an appeal but petitioner

was notified of counsel's withdrawal); *Williams v. Vasbinder*, No. 5-

73471, 2006 WL 2123908, *3-4 (E.D. Mich. July 27, 2006) (no equitable

tolling based upon appellate counsel's withdrawal because the petitioner

could have filed a pro se motion and did not explain his delay in doing so).

Additionally, it was not abandonment for Petitioner's attorneys to refuse to pursue certain issues, particularly where Petitioner was capable of raising such claims himself. *See Maples*, 565 U.S. at 288-89; *Young*, 702 Fed. Appx. at 261-62; *Kincade v. Wolfenbarger*, 324 Fed. Appx. 482, 494 (6th Cir. 2009) ("To be constitutionally adequate under *Strickland*, appellate counsel is not required to raise every non-frivolous argument on appeal."). This is especially true where, as here, the attorneys informed Petitioner of their decisions and formally withdrew from representation. *See Maples*, 565 U.S. at 270-71 (noting the significance of attorneys' failure to communicate with the petitioner and to withdraw from case in finding abandonment). Petitioner fails to show that Rust, Ambrose, or Comorski's actions amounted to the abandonment necessary to warrant equitable tolling of the one-year limitations period.

Given this determination, Petitioner is additionally not entitled to equitable tolling based upon any alleged deficient conduct or abandonment by the attorneys who represented him *after* the one-year

limitations period expired on June 14, 2008. Equitable tolling, like statutory tolling, does not operate to revive an expired limitations period. *See Jurado*, 337 F.3d at 641; *see also George v. Winn*, No. 15-14057, 2016 WL 1182728, *3 (E.D. Mich. March 28, 2016) (collecting cases); *Pinson v. Boynton*, No. 9-13640, 2010 WL 3245405, *4 (E.D. Mich. Aug. 17, 2010); *accord Lewis v. United Air Lines, Inc.*, 117 F. Supp. 2d 434, 441 (D.N.J. 2000) ("[E]quitable tolling functions to halt an already running limitations period that has not expired; it does not function to revive a stale claim."). Consequently, "[e]vents or actions occurring after the expiration of the limitations period cannot serve to extend that period or excuse [a litigant's] failure to comply with the limitations period." *Doan v. NSK Corp.*, 266 F. Supp. 2d 629, 638 (E.D. Mich. 2003); *see also Armstrong v. Romanowski*, No. 8-14961, 2014 WL 222327, at *3 (E.D. Mich. Jan. 21, 2014) (alleged ineffectiveness by counsel hired after the limitations period had expired did not affect the timeliness of the petition).

Thus, while it may very well be that attorney Bunting abandoned Petitioner at points during his 2009-2014 representation, (ECF No. 2,

-21-

PageID.112-113), this time period falls outside of the one-year AEDPA limitation and is not subject to equitable tolling. There was therefore no attorney abandonment within the relevant period that would entitle Petitioner to equitably tolled time.

## ii. Diligent pursuit of rights

Habeas petitioners are not entitled to equitable tolling unless they can demonstrate that they diligently pursued their post-conviction rights during the period to be tolled. *See Holland*, 560 U.S. at 645; *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990). Petitioner fails to establish that he acted with sufficient diligence during the one-year limitation period to justify equitable tolling.

Petitioner cites one instance during the one-year period as evidence that he diligently pursued his rights: Petitioner's December 15, 2007 letter to Judge Ewell expressing concern that Ambrose did not believe there were any appealable issues. (ECF No. 1, PageID.35.) While this letter indicates that Petitioner was invested in his case, investment is not the same as diligence, and diligence is what the standard requires. As the Sixth Circuit has noted: "Arguably, counsel's activities amount to due

(and perhaps excessive) diligence in pursuing every possible *theory*, no matter how feeble. They do not, however, amount to diligence in pursuing his *rights*, where counsel was on notice of AEDPA's one-year grace period and failed to act within that period." *Jurado*, 337 F.3d at 644 (emphasis added) (finding no equitable tolling when the attorney did extensive research but did not timely file the habeas petition).

When Petitioner was notified that his several appellate attorneys found no legal basis for plea withdrawal or appeal, Petitioner did not pursue such matters on his own. *See Lafler*, 455 Fed. Appx. at 610-11 (finding insufficient diligence when petitioner "did not encourage his attorney to meet deadlines or request notice of deadlines, and he did not file a pro se petition the day he learned that the habeas time period had expired"). Petitioner was knowledgeable enough about the process to write Judge Ewell and express frustration with his attorney, but when such frustration is not accompanied by legal action, equitable tolling will not apply. *See id.*; *Jurado*, 337 F.3d at 644. Petitioner thus fails to demonstrate that he acted with sufficient diligence during the requisite time to justify equitable tolling.

### iii.    Equitable tolling based on actual innocence

Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin*, 569 U.S. at 399-400; *Souter*, 395 F.3d at 588-90. As S*outer* explains, actual innocence requires a petitioner to demonstrate that it is "more likely than not that no reasonable juror would vote to convict." *Id.* at 598; *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006). Such a demonstration cannot merely rehash trial arguments or cast unsubstantiated aspersions on trial evidence: A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence—that was not presented at trial." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 324). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In keeping with Supreme Court authority, the Sixth Circuit has stated that the actual innocence exception should "remain rare" and "only be applied

in the 'extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

The actual innocence threshold is extraordinarily high, and Petitioner does not meet it. His assertion of innocence does not establish a credible claim of actual innocence. *See, e.g., Craig v. White*, 227 Fed. Appx. 480, 481 (6th Cir. 2007) ("Where a petitioner asserts actual innocence solely based on his interpretation of the law, [] *Souter*'s actual innocence exception does not apply."). Though Petitioner's habeas petition does not fully argue actual innocence, it references Petitioner's earlier motion for relief from judgment, which makes a brief innocence argument. (*See* ECF Nos. 1, PageID.8-9; 1-13, PageID.100-101.) In the motion, Petitioner notes that a psychologist with the Department of Corrections told him, post-conviction, that the DNA evidence in his case did not match his own DNA. (ECF No. 1-13, PageID.101.) However, this conclusory allegation is insufficient—Petitioner offers no affidavit from that individual or any scientific evidence in support of his claim. This single allegation is not the kind of "new" or "reliable" evidence that equity

requires in order to grant Petitioner relief from dilatory filing. *See Souter*, 395 F.3d at 590.

Petitioner fails to establish that he is entitled to equitable tolling of the one-year period. His habeas petition is therefore untimely and must be dismissed. *Lafler*, 455 Fed. Appx. at 608.

## IV.   CONCLUSION

Based upon the foregoing discussion, the Court concludes that the habeas petition is untimely and that Petitioner is not entitled to equitable tolling of the one-year period. Accordingly, the Court **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies relief on the merits, petitioners may meet the substantial showing threshold by demonstrating that reasonable jurists would find the court's assessment

of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But when a district court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable both whether the petitioner states a valid claim of the denial of a constitutional right, and whether the district court was correct in its procedural ruling. *Id*. at 484-85. In this case, jurists of reason could not find the Court's procedural ruling that the habeas petition is untimely debatable. Accordingly, the Court **DENIES** a certificate of appealability.

Finally, the Court finds for the reasons above that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED.**

Date: November 12, 2019          s/Judith E. Levy
     Ann Arbor, Michigan          United States District Judge

# **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 12, 2019.


s/William Barkholz
Case Manager